IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CAROL ANN BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-3307 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Carol Ann Barnes appeals the Defendant Commissioner's denial of her application for disability insurance benefits and supplemental security income (collectively Disability Benefits).  42 U.S.C. §§ 405(g) and 1383(c)(3).  Both parties have filed cross motions for summary judgment.  For the reasons set forth below, the Plaintiff's Motion for Summary Judgment (d/e 7) is ALLOWED and the Defendant's Motion for Summary Affirmance (d/e 9) is DENIED.  The Decision of the Commissioner is reversed and remanded for further proceedings consistent with this Opinion.

1

## STATEMENT OF FACTS

Barnes was born October 11, 1954. She graduated from high school. She filed her application for Disability Benefits on October 19, 2005. She alleged that she became disabled on December 31, 2004. Before her alleged disability, she worked as a floral design assembler, general office clerk, cook, and picket line attendant. <u>Certified Transcript of the Record of Proceedings (d/e 5) (hereinafter R.)</u>, at 111-13, 130-32, 164-67. She last worked from April 1, 2005, to June 28, 2005, as a floral assembler. <u>R.</u> at 100, 116.

Barnes suffers from chronic obstructive pulmonary disease (COPD). On July 12, 2005, Barnes was admitted to the hospital because of exacerbation of her COPD and pneumonia. <u>R.</u> 177-92. Barnes has a history of smoking one to two packs of cigarettes per day and drinking two to three alcoholic beverages per day. <u>R.</u> 179. On July 14, 2005, Barnes was discharged from the hospital and referred to the Capitol Community Health Center (Capitol) in Springfield, Illinois, for follow-up treatment.

Barnes went to Capitol in September 2005, for further evaluation. On examination, Barnes had good air entry, and no wheezing or rales. <u>R.</u> 200. Barnes underwent pulmonary function testing. <u>R.</u> 193-95. Barnes was 67 inches tall and weighed 170 pounds at the time. Plaintiff achieved a Forced

Expiratory Volume ($FEV_1$) value of 1.43 and a Forced Vital Capacity (FVC) value of 2.27. She then was given bronchial medication. After medication, her $FEV_1$ value was 1.38 and her FVC value was 2.39. R. 193-94. The tests also revealed that Barnes had diminished diffusion capacity, down to 66%. The study was consistent with moderate obstructive ventilatory defect with hyperinflation and decreased diffusion capacity consistent with a diagnosis of emphysema. R. 193. On October 14, 2005, the physician at Capitol noted in Barnes' records that her COPD disease was poorly controlled in the Fall of 2005, and that she was depressed and taking medication for depression. R. 198.

In January 2006, a state agency medical reviewer, Arjmand Towfig, M.D., opined that Barnes could: (1) lift 10 pounds occasionally and less than 10 pounds frequently; (2) sit, stand and/or walk about 6 hours in an 8-hour day; (3) frequently balance; (4) occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and (5) never climb ladders, ropes or scaffolds. Dr. Towfig also opined that Barnes should avoid: (1) concentrated exposure to hazards, machines, and heights; and (2) moderate exposure to fumes, odors, dusts, gases, and poor ventilation. R. 208-15. Dr. Towfig opined that Barnes' pulmonary impairment did not meet the

3

Listings of impairments in the Social Security Regulations for which a person is considered disabled without regard to her age, education, and prior work experience. R. 215. See 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings).

In February 2006, another state agency medical reviewer, Sai Nimmagadda, M.D., reviewed Barnes' records. Dr. Nimmagadda disagreed with Dr. Towfig's conclusions. Dr. Nimmagadda opined that Barnes' $FEV_1$ value would allow her to lift 25 pounds occasionally and 10 pounds frequently. He stated that Barnes' Residual Functional Capacity (RFC) might be between the light to medium exertional levels, with environmental limitations due to her COPD. Dr. Nimmagadda agreed that Barnes' impairment did not meet any of the impairments in the Listings. R. 233.

In March 2006, another state agency reviewing physician, Anthony Agatucci, M.D., reviewed the record and opined that Barnes was limited to lifting 20 pounds occasionally and 10 pounds frequently; balancing frequently; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; and never climbing ladders, ropes, or scaffolds. Dr. Agatucci further opined that Barnes should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 234, 245-53. Another

state agency reviewing physician, Richard Bilinsky, M.D., affirmed this assessment. R. 278-79.

In April and June 2006, Barnes underwent sleep studies. She was diagnosed with mild sleep apnea. R. 254-55, 282. She also complained of coughing and chest pain. She was advised to quit smoking.

In October 2006, Barnes was evaluated for back pain, loss of sensation in her arms, and COPD. Examination showed impaired sensation in her hands, no evidence of muscle weakness or wasting, preserved deep tendon reflexes, and normal right upper extremity. R. 335. EMG and nerve conduction studies showed left ulnar neuropathy in the elbow region, and possible left carpal tunnel syndrome. R. 335-38. Surgery was recommended for her elbow, but none was performed.

In October 2006, Barnes also started to quit smoking and started using a CPAP machine for her sleep apnea. R. 283-84. By November 2006, Barnes had quit smoking. R. 346-47. Barnes continued to complain of difficulty breathing. She continued to have coughing problems, especially in the morning.

The Administrative Law Judge (ALJ) conducted a hearing on December 5, 2006. Barnes testified at that time, but the vocational expert

did not appear. The ALJ held a supplemental hearing on March 27, 2007, to take testimony from the vocational expert. R. 17.

Barnes testified that she last worked in June 2005. She said that she was disabled because of her breathing difficulties. Barnes stated that she stopped smoking in October 2006 and stopped drinking in July 2005. She said that her medications helped some, but her inhalers made her shake. Barnes used a nebulizer at home four to five times a day. Each treatment took 20 minutes. Barnes testified that she could walk about 25 to 30 feet, but would start to get dizzy and would have to sit down. She said she could barely lift her eight-pound Pekingese dog. Barnes lived alone until April 2006, when she lost her home. She then moved in with a neighbor. Barnes no longer drove because she lost her license in 2002 due to a second DUI. Barnes stated that when she lived alone she cooked a few meals, did one load of laundry a week, and grocery shopped twice a month with a neighbor. Barnes testified that she attended AA meetings and had visitors. Barnes also testified that she took care of her personal hygiene and took care of her dog. R. 400-417.

Vocational expert James Lanier, Ph.D., testified at the supplemental hearing. The ALJ asked the following hypothetical question of Dr. Lanier:

> ALJ: -- I would like you to consider an individual who is between 50 and say 53 years old, past -- well, high school education, past relevant work as described by Ms. Barnes, an individual who's limited to medium, light and sedentary work, with the following exceptions. No jobs which would require climbing, and no jobs which would require working in a concentrated exposure to respiratory irritants, including extreme cold, heat, wetness and humidity. How would these restrictions affect the performance of the past relevant work?

R. 384. Dr. Lanier responded:

> VE: Based on the hypothetical, I think she can continue doing the work in the floral shop. She also worked as a store janitor. I think she can continue doing that. Office helper, general office clerk, waitress, cook, the picket line boss, the job she had where she had to put labels on items.

R. 384. Dr. Lanier said that he assumed she would not be outside as the picket line boss, otherwise, she would not be able to perform that job. R. 385.

The ALJ then asked Dr. Lanier about other available entry level jobs at the light and medium exertional level that the person in the ALJ's hypothetical question could perform. Dr. Lanier listed fast food worker, cafeteria attendant, kitchen helper, cashier II, and counter clerk as jobs at the light exertional level. Dr. Lanier listed cashier, medium kitchen helper, dishwasher, information clerk, stock clerk, and food prep worker at the

7

medium exertional level.  R. 385-86.

On examination by Barnes' attorney, Dr. Lanier stated that Barnes' past work was all at the light or medium exertional level.  He also opined that she had no transferable skills from her past relevant work to any sedentary jobs.  R. 386.

On June 18, 2007, the ALJ issued her Decision.  R. 17-28.  The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Such severe impairments are set forth in the Listings.  20 C.F.R. Part 404 Subpart P, Appendix 1.  The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the

ALJ to determine whether the claimant is able to return to his prior work considering his RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ determined that Barnes met her burden at Steps 1 and 2 of the Analysis.  R. 19.  The ALJ found that Barnes has not been gainfully employed and she suffers from severe impairments including COPD, emphysema, obesity, depression and substance addiction disorder, sleep apnea, and ulnar neuropathy at the left elbow.  The ALJ reserved ruling on whether her last day of work was June 28, 2005.  R. 20.

The ALJ found that Barnes' impairments were not so severe as to meet any of the Listings at Step 3.  The ALJ identified Listings for depression, alcohol and drug dependency, sleep apnea, neurological disorders, and

COPD and found that Barnes did not meet any of them.  R. 21-22.

At Step 4, the ALJ first determined that Barnes had the RFC to perform work at the medium level with some non-exertional limitations:

> The claimant has not demonstrated with credible evidence that she lacks the residual functional capacity to perform work at the medium exertional level, which requires the ability to lift or carry up to 25 pounds frequently and 50 pounds occasionally and stand and walk for the greater part of the day.  The limitation to medium work is due to all her pain complaints including arm pain, pulmonary problems, obesity and all her impairments combined.  She should not perform climbing due to episodes of shortness of breath, sleepiness and arm pain.  The work should require no concentrated exposure to respiratory irritants including extreme cold, heat, wetness and humidity due to all pulmonary problems.

R. 22-23.  The ALJ based her findings largely on Barnes' daily activities:

> Although the claimant may experience some pain, shortness of breath and limitation of functioning due to her diagnosed impairments, she is able to lead an active life style despite her health problems. . . .  Ms. Barnes testified that she lived by herself until April 2006.  She performed household chores; and since living with another person, she has relinquished some chores such as laundry and cooking, other than simple food preparation.  Ms. Barnes testified that she continued to be independent with self-care.  She no longer drives, but this is due to DUI charges.  She has a pet dog that she takes care of.  The subjective degree of limitation and pain is not consistent with the claimant's reported activities or medical records.

R. 26.  The ALJ then discussed the opinions of the state agency physicians:

> State Agency evaluators concluded that the claimant was limited

to work activity at the light exertional level; however, the undersigned has concluded that the evidence does not establish such restrictive limitations (Exhibit 12F).  There is no medical evidence to indicate that any health care professional has limited the claimant to lifting 20 pounds.

R. 26.  Exhibit 12F, to which the ALJ referred, was the opinion of Dr. Agatucci.  See R. 3, 246-53.

Based on the ALJ's determination of Barnes' RFC and Dr. Lanier's testimony, the ALJ concluded at Step 4 of the Analysis that Barnes could perform her past work as a floral designer, store janitor, office helper, office clerk, cook, and cashier II.  R. 26.  The ALJ, thus, determined that Barnes was not disabled.  In the alternative, the ALJ also determined at Step 5 that Barnes could perform a significant number of jobs in the national economy.  The ALJ based her determination at Step 5 on Barnes' RFC and Dr. Lanier's testimony.

Barnes appealed this Decision to the Social Security Administration Appeal Council.  The Appeals Council denied her request for review on September 19, 2007.  Barnes then brought this action.

## ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence.  Substantial evidence is, "such relevant

evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court must accept the ALJ's findings, if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  The ALJ further must articulate at least minimally her analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence.  Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

In this case, the ALJ failed to articulate her analysis of all of the relevant evidence, and as a result, the Court cannot determine whether the ALJ considered all the important evidence.  Specifically, the Court does not understand how the ALJ reached the conclusion that Barnes could perform work at the medium exertional level.  The objective medical evidence shows that Barnes suffers from COPD.  Her pulmonary function tests showed significant limitations.  Her $FEV_1$ values were not enough to meet a Listing by themselves.  The Listing for chronic pulmonary insufficiency requires an $FEV_1$ value of 1.35 or below, and Barnes' $FEV_1$ values were 1.43 and 1.38.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.02.  Even though her test

results did not meet the Listing, they are significant. The ALJ did not explain how she included this objective medical evidence in her determination of the RFC.

The ALJ also did not articulate her analysis of all of the expert medical opinion evidence. The ALJ stated that the state agency experts opined that Barnes could perform work at the light exertional level. Work at this level requires the ability to lift 20 pounds occasionally and 10 pounds frequently. 20 C.F.R. § 404.1567. Dr. Towfig opined that Barnes could only lift 10 pounds occasionally. Work at this exertional level is considered sedentary. Id. The ALJ did not address Dr. Towfig's opinion at all.

The other Agency physicians, Drs. Nimmagadda, Agatucci, and Bilinsky, opined that Barnes could perform work at the light exertional level.[1] The ALJ acknowledged their opinions, but rejected them because no physician limited Barnes to lifting 20 pounds. The Court cannot track the ALJ's analysis at this point. The ALJ's observation that Barnes' medical records omit a formal lifting restriction begs the question: the issue is not

---

[1]Dr. Nimmagadda made a reference to work at the light to medium level, but he opined that Barnes could lift 25 pounds occasionally and 10 pounds frequently. This lifting limitation is consistent with work at the light exertional level, not the medium exertional level. 20 C.F.R. § 404.1567.

13

what is missing from Barnes' medical records, but whether the information in the medical records supports the opinions of these physicians. These four physicians were all retained by the state as independent experts. They all looked at Barnes' medical records and all concluded that Barnes could lift 20 to 25 pounds occasionally and 10 pounds frequently. Three of the physicians opined that she could perform work at the light exertional level and one opined that she should be restricted to sedentary work; however, none concluded that she could lift 50 pounds occasionally and 25 pounds frequently. The ALJ did not sufficiently articulate why the information in Barnes' medical records did not support the four physicians' expert opinions. This is particularly true in light of the objective medical evidence of Barnes' pulmonary function testing. Because the Court cannot track how the ALJ accounted for the medical expert opinion evidence in her analysis, the Commissioner's Decision must be reversed and remanded.

     The Court also cannot track the ALJ's conclusion that Barnes' daily activities demonstrated that she could perform work at the medium exertional level. The ALJ based her determination of Barnes' RFC largely on the evidence of Barnes' daily activities. The ALJ observed that Barnes lived alone, had visitors, did household chores, shopped for groceries, drove

until her second DUI, took care of her personal hygiene, and took care of an eight-pound dog. The Court does not understand how any of these facts show that Barnes could lift 25 pounds frequently and 50 pounds occasionally. No evidence indicates that any of the activities involved lifting 25 pounds frequently. The ALJ again did not adequately articulate how these activities showed that Barnes could perform work at the medium exertional level.

Barnes also argues that the ALJ erred in not finding Barnes was disabled at Step 3. The Court agrees that the ALJ should have explained the basis for her findings at Step 3 more clearly. Barnes' $FEV_1$ 1.38 value is above the 1.35 value required in Listing 3.02. Barnes, however, had FVC values of 2.27 and 2.39, and diminished diffusion capacity, down to 66%. The ALJ did not address whether these factors may have made her condition equivalent to the one set forth in the Listing. The ALJ also did not address whether the diminished diffusion capacity required testing to determine Barnes' diffusing capacity of the lungs for carbon dioxide, pursuant to Listing 3.00. 20 C.F.R., Part 404, Subpart P, Appendix I, Listing 3.00 ¶F.1.

In addition, the ALJ did not address the possible combined effects of Barnes' obesity and respiratory problems. The ALJ found that Barnes was

15

impaired due to obesity and COPD. In such cases, the regulations state that:

> The combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, . . . adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R., Part 404, Subpart P, Appendix I, Listing 3.00 ¶I. The ALJ did not address the combined effects of Barnes' obesity and COPD at Step 3 of the Analysis. The Court, therefore, agrees that the ALJ failed to analyze the available evidence properly at Step 3. Her decision at Step 3, therefore, must also be reversed and remanded.

THEREFORE, Plaintiff's Motion for Summary Judgment (d/e 7) is ALLOWED and the Defendant's Motion for Summary Affirmance (d/e 9) is DENIED. The Decision of the Commissioner is reversed and remanded for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g) sentence four.

IT IS THEREFORE SO ORDERED.

ENTER: December 10, 2008

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE